```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROSINA MURCHINSON,

                    Plaintiff,              09-CV-0258

v.                                          **DECISION
                                            and ORDER**
MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
_____
```

## **INTRODUCTION**

Plaintiff Rosina Murchinson ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Eric L. Glazer, denying her application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c) ("Rule 12(c)"), on the grounds that the ALJ's decision was supported by substantial evidence, and made in accordance with applicable law.[1] This Court finds that the

---

[1] Response to the Commissioner's motion for judgment on the pleadings was never completed by Plaintiff. See Docket Entry #10. No response was filed by Plaintff as of the date of this decision.

decision of the Commissioner for the reasons set forth below, is supported by substantial evidence, and is in accordance with applicable law and therefore the Commissioner's motion for judgment on the pleadings is hereby granted.

## BACKGROUND

On March 25, 2005, Plaintiff, at the time a 45 year old unemployed woman filed an application for Supplemental Security Income under Title XVI of the Social Security Act ("the Act"). (R. 102)[2]. Plaintiff claims a date of disability beginning on January 1, 2003 and continuing through the date of this decision. In a decision dated July 21, 2009, the ALJ determined that the Plaintiff was not disabled. The ALJ's decision became the final decision of the of the Commissioner when the Social Security Appeals Council denied the Plaintiff's request for timely review on January 23, 2009. On March 19, 2009, Plaintiff filed this action pursuant to § 405(g) of the Act for review of the final decision of the Commissioner.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Disability Insurance Benefits and Supplemental Security Income. Additionally, the section

---

[2]Citations to "R." refer to the Record of the Administrative Proceedings

directs that when considering such claims, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence. See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex.1983) (citation omitted). Defendant asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

## II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence within the record and is proper as a matter of law

The ALJ in his decision, found that Plaintiff was not disabled pursuant to the relevant portions of the Social Security Act ("the Act"). A disability is defined within 42 U.S.C. § 423(d) to be the:

> "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1991).

In determining the threshold question of Plaintiff's disability, the ALJ adhered to the Administration's 5-step sequential analysis for evaluating assignments of disability benefits.[3] See 20 C.F.R. § 404.1520. Having gone through the evaluation process, the ALJ found: (1) Plaintiff has never engaged in substantial gainful activity; (2) Plaintiff had suffered from the following "serious impairments": cardiac arrhythmia, obesity, depression, and post traumatic stress disorder; (3) Plaintiff's impairments did not meet or equal those listed within 20 C.F.R.

---

[3] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity ("RFC") to perform his past work; and (5) determine whether the claimant can perform other work. See id.

Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 416.920(d)); (4) Plaintiff does not have any past relevant work; (5) Considering Plaintiff's residual functioning capacity, as well as other qualifications such as age, education, and work experience, there exists other jobs within the national economy that Plaintiff can perform. (R. 110-113).

### A. **The medical evidence within the record supports the Commissioner's finding that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1**

The ALJ properly relied on the criteria listed within sections 4.05 (Recurrent Arrythmias), 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders) of the listed impairments that a claimant must have in order to be diagnosed with a disability. (R. 105). As ALJ Mazzarella discussed, considering Plaintiff's impairments, none of them either singly, or combined, reach the severity level required in order to find the Plaintiff disabled within the meaning of the Act. (R. 105-106).

Considering the evidence within the record, including medical expert testimony, the ALJ properly found that:

> "claimant is able to adjust to increased mental demand and changes in her environment. She is able to function outside a highly supportive living arrangement and does not require such an arrangement. There is no evidence that the claimant's depression and its impact on her functioning is of such severity that is renders her unable to function outside of her home." (R. 106).

Page -5-

Though the Plaintiff demonstrated limited restrictions due to both her physical and mental impairment, I find that Plaintiff's restrictions do not meet the severity required under sections 4.05, 12.04, and 12.06 to support a finding of disabled. Therefore Plaintiff does not meet or equal a listed impairment listed within 20 C.F.R. Part 404, Subpart P, Appendix 1.

### B. **The Commissioner's finding that Plaintiff retains the RFC to perform sustained work activity is supported by substantial evidence within the record**

In Plaintiff's submissions to the Court, she stated her reasons for inability to work was due to her depression, elevated blood pressure, arrhythmia, diabetes, and knee pain. (R. 33-66). The ALJ was correct in considering all of the medical testimony within the record, as well as the functioning reports that were completed by both the Plaintiff and her doctors. (R. 212- 222, ). In Plaintiff's first functioning report, Plaintiff discussed a few of her daily activities, such as caring for her children and cooking. (R. 213). Plaintiff also states that she used to enjoy being with her friends and family, but now just wants to be left alone; but that she still cares for her children, specifically, her infant. Id. Plaintiff claims she does not have any hobbies, and she does not like to socialize with anyone, and would rather just stay home. (R. 217).

During the Administrative Proceeding, the Plaintiff testified that she had never had a job because she was always caring for her

children. (R. 32-33). Plaintiff had also stated that she had never looked for any work, because she claims to be disabled to the extent that her medical impairments prevent her from being employed. (R. 33).

### I. Medical evidence supports the Commissioners decision that Plaintiff retains the RFC to perform some type of light, unskilled work

The ALJ properly determined that the Plaintiff was not a disabled person based on the substantial medical evidence within the record. (R. 102).

Dr. Babu Patel evaluated the Plaintiff on May 29, 2003 at the request of the Commissioner. (R. 275-276). Dr. Patel's findings were normal in relation to Plaintiff's physical examination, and also opined that Plaintiff had moderate impairment in walking, lifting, and carrying, but that she would be able to perform light activity. (R. 275). On May 19, 2004, Plaintiff was checked into Interfaith Medical Center with "atrial fibrillation and preeclampsia" when she was eight and a half months pregnant. (R. 284). Plaintiff was treated and then released two days later on May 21, 2004. Id.

Plaintiff was also examined by Dr. Antonio DeLeon, a consulting physician, on June 9, 2005. (R. 438). After her complaint of hypertension and atrial fibrillation, she was given a stress test and echocardiogram that revealed normal systolic function but diastolic dysfunction. Id. Dr. DeLeon also noted

that Plaintiff's physical exam was normal, and had opined that Plaintiff was only mildly impaired in activities requiring standing, walking, lifting, carrying, and handling objects secondary to hypertension and chest pain. Id. The ALJ is permitted to evaluate and resolve the discrepancy between the testimony of the Plaintiff and the doctors, to determine which testimony should be considered as substantial evidence. It is well established that a consultive physician's opinion may serve as substantial evidence in support of an ALJ's finding in determining a claim of disability. Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983). Because the ALJ had considered all of the doctors opinions as to Plaintiff's claims of disability, and Dr. DeLeon's conclusion was not contradicted by any other medical evidence within the record, the ALJ's reliance upon his findings was appropriate.

Dr. Harris Davis had examined Plaintiff on August 23, 2005 and stated that Plaintiff had complained of lower back pain but walked freely. (R. 471). Dr. Davis had also noted that Plaintiff had failed to keep two scheduled appointments, and had not followed through with Blood Sugar testing the doctor had suggested despite her high blood sugar readings. (R. 471). Dr. Michael Slater was Plaintiff's primary care physician, and had routinely examined her from July 2006 until October 2007. Dr. Slater found that Plaintiff's examinations were generally normal, and her

hypertension, insomnia, and depression were all stable. (R. 508). Dr. Salter had also evaluated Plaintiff for the purpose of receiving SSI on October 31, 2007. At point two of the continuation sheet within the record, Dr. Slater stated Plaintiff was "not going to get disability from me. She needs to get this from [the] psych." (R. 506).

Dr. Slater's refusal to recommend disability supports the ALJ's finding that Plaintiff did not have any limitations that would prevent her from obtaining employment.

Plaintiff was also admitted to Buffalo General Hospital with atrial fibrillation. (R. 532-34). An examination showed Plaintiff was afebrile with a respiratory rate of 22 and a pulse of 160, which is classified as "irregularly irregular". (R. 533). Once Plaintiff was stable and released, home health care visits were assigned to her due to her atrial fibrillation. (R 566). Dr. Victor Olaolu noted in the home treatment plan that Plaintiff's only functional limitation involved endurance, and there were no restrictions in Plaintiff's activities. (R. 566). During home treatment, Plaintiff was still able to perform most of the activities within her daily living, including: bathing, preparing light meals, light laundry, and shopping. (R. 574).

In addition to her physical impairments, Plaintiff also claims mental impairments. Dr. Bruce Rubenstein had conducted a psychiatric consultative examination on June 5, 2003.(R. 280-81).

During this examination, Dr. Rubenstein opined that Plaintiff's memory, understanding, sustained concentration and persistence, social interaction and adaptation were moderately impaired. Id.

Dr. Harvey Barash had also completed a consultative psychiatric examination[4] of the Plaintiff on June 9, 2005. During this exam, Plaintiff stated that she lives at home and takes care of her four children and that she also cooks, cleans, and shops. (R. 435-36). Dr. Barash stated that Plaintiff was fairly oriented, along with fair memory and concentration and her insight and judgment were also fair. Id.

Dr. Bill Sand, Plaintiff's treating psychiatrist had completed an evaluation of the Plaintiff on August 1, 2005 at the request of the New York State Division of Disability Determination. (R. 445-451). The doctor found that Plaintiff had difficulties being around people and feared people were out to hurt her. (R. 449). Dr. Sand opined that Plaintiff, due to her paranoia and depression, was unable to work. (R. 449). The ALJ correctly found that because Dr. Sand's opinion was contradicted by other medical opinions, his opinion would not be afforded controlling weight. The ALJ was also unsuccessful in attempting to contact Dr. Sand to clarify his opinions. Accordingly he correctly chose not to give Dr. Sand's opinion much weight. (R. 111, 472, 475).

---

[4] Consultative exam may be considered as substantial evidence, as long as it does not contradict other medical evidence within the record. Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983).

Dr. Erlinda Gagan, a State Agency non-examining medical consultant, reviewed Plaintiff's medical record on September 12, 2005. (R. 473-75). After reviewing the record, the doctor determined that Plaintiff had no significant limitations within her concentration and persistence, understanding and memory, social interaction and adaptation. Id. Dr. Gagan also noted that despite Plaintiff's claims and therapist's reports regarding voices Plaintiff heard in her head, she was never placed on antipsychotic medications. (R. 475). Dr. Gagan opined that Plaintiff would be "able to understand, remember and carry out simple instructions; maintain concentration, pace and persistence; interact adequately with peers and supervisors and adapt to changes in work setting." Id.

On November, 28, 2006, Plaintiff was seen at Horizon Corporations by Dr. Wonhoon Park. (R. 540-41), and was assessed a GAF level of 55-60 and diagnosed dysthmia. Id. On December 13, 2007, a nurse practitioner noted that Plaintiff was diagnosed with dysthymic disorder in November of 2006 and major depression in December of 2007. (R. 537).

Due to the consistency of the many medical opinions among non-collaborating doctors, weighed against the contradicting opinion of Dr. Sand, I find that the ALJ was correct in assessing the weight to be given to the opinion of each doctor.

### ii. **The ALJ properly assessed Plaintiff's credibility**

Examination of the record revealed that the ALJ had properly evaluated Plaintiff's credibility and followed the criteria articulated within SSR 96-7p.

The ALJ correctly held that because Plaintiff's allegations in relation to her disability were inconsistent with the record as a whole, she could not be found to be credible. Plaintiff also had no record of good work to show any "favorable inferences of an individual well motivated to work." (R. 110). Plaintiff's credibility is also questioned when her treating physician, Dr. Slater, would not give her a favorable exam. The treating physician specifically stated that she would not get an opinion of disability from him, and she should get it from her psychiatrist. (R. 110).

In examining the substantial evidence within the record, it is clear based on Plaintiff's inconsistent subjective complaints as evaluated by numerous doctor's opinions, and the objective evidence in the record that her credibility is questionable. Also the fact that Plaintiff does not have prior work to account to her willingness to obtain employment does not weigh in her favor in relation to her credibility.

I therefore conclude that because Plaintiff's complaints were unsupported by the medical evidence within the record, a claim of disability was properly denied because the record lacked medical

signs or other findings which support the existence of a medical condition. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(b) and 416.929(b); SSR 96-7p. Since Plaintiff's subjective complaints did not have medical evidentiary support, the ALJ was correct in not assessing any weight to Plaintiff's subjective complaints. Both the medical records and the doctor's opinions support the ALJ's decision that Plaintiff's impairments do not reach the severity level of disability under the Act that would qualify the Plaintiff for SSI.

### C. **Substantial evidence within the record supports the ALJ's decision that Plaintiff retained the RFC to perform light unskilled work within the economy and was not disabled with the meaning of the Act**

Since Plaintiff had never had a job to which RFC could be compared to, the burden is then to the Commissioner to show that Plaintiff does retain the RFC to perform other jobsexisting in the economy. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

In satisfying this burden, the Commissioner may rely on the testimony of a Vocational Expert ("VE") to show what jobs exist in the national economy that the Plaintiff may perform. Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997). In addition to the Vocational Expert, the ALJ had to consider Plaintiff's RFC, age, education, and work experience, all in conjunction with the Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, Appendix 2.

During the Administrative Proceedings, a VE was brought in to testify as to whether there were jobs that the Plaintiff could perform with her physical impairments. In addition the VE was brought in to assist the ALJ in reaching a decision as to whether Plaintiff was "disabled" or "not-disabled" within Plaintiff's specific vocational profile. (R. 112-113).

The VE was posed a series of hypothetical questions that involved the same limitations as Plaintiff's. The VE testified, through questions posed by the ALJ, that a person that has the same RFC, education, age, and work experience would be able to perform light unskilled occupations. (R. 68-69, 112). The VE testified that with all of the impairments that an individual such as the Plaintiff may have, the job opportunities might consist of: "light bench assembler (DOT # 706.684-042), a job requiring light exertion level and unskilled qualifications of which there are about 1,100 types of jobs within the local economy; inspector (DOT # 529.687.114) 400 positions within the local economy; molding machine tender (DOT # 556.685-022), light work of which there are approximately 460 in the local economy; and a house cleaner (DOT # 323.687-014) of which there are 1,800 jobs locally. (R. 71-72).

Based on substantial evidence within the record, and the testimony of the VE, I find that the ALJ properly concluded that the Commissioner had shown there were jobs in sufficient numbers within the economy which the Plaintiff could perform.

Accordingly, I find that the ALJ's decision that Plaintiff was not qualified to receive Supplemental Security Income is supported by substantial evidence in the record.

## **CONCLUSION**

For the reasons set forth above, I grant the Commissioners motion for judgment on the pleadings. Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                              s/Michael A. Telesca
                                                MICHAEL A. TELESCA
                                         United States District Judge

Dated:    Rochester, New York
            July 2, 2010